UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DR. GARY BROWN, DMD, PSC, and BRYAN PRYOR, *individually and on behalf of all others similarly situated*, | ) ) ) ) | Civil No. 15-50-ART |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA and THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | ) ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When a storm damages the roof of a building, the homeowner often files a claim with his insurance company. Under the terms of many insurance policies—like the two at issue here—the homeowner may elect to receive the "actual cash value" of the damage to the roof. That figure is easy to calculate when the damage occurs immediately after the homeowner purchases the building: the actual cash value is whatever the homeowner paid for the roof. But what if the storm comes much later? For example, what is the "actual cash value" of a ten-year-old roof? The parties here agree on the underlying arithmetic: "actual cash value" is the replacement cost of the damage to the roof minus ten years' worth of depreciation. This dispute is over how to calculate the depreciation. In the defendants' view, the insurer is entitled to "depreciate" the entire value of the roof, including the value of the labor used to build it. In the plaintiffs' view, the insurer is entitled to "depreciate" only the value of the materials.

## BACKGROUND

The plaintiffs, Gary Brown and Bryan Pryor, are property owners who have insurance policies with Travelers Casualty Insurance Company of America and Travelers Home and Marine Insurance Company (collectively, "Travelers").  Both of these policies promised to pay the plaintiffs the "actual cash value" of damage to covered property.  *See* R. 30-2 (Brown policy); R. 30-3 (Pryor policy).  Specifically, Brown's policy stated that he could "make a claim for loss or damage covered by [his] insurance on an actual cash value basis instead of on a replacement cost basis."  R. 30-2 at 43.  Brown filed a claim for the actual cash value of damaged property when his dental-office building sustained water damage after a snow and ice storm.  R. 11 ¶ 16; R 17-1 at 3.  Similarly, Pryor's policy provided that he could "make [a] claim under this policy for loss to buildings on an actual cash value basis."  R. 30-3 at 35.  Pryor filed a claim for the actual cash value of his damaged property when his home was damaged by a water-pipe leak.  R. 11 ¶ 22; R. 17-1 ¶ 6.  Neither of these policies further defined actual cash value.  *See generally* R. 30-2; R. 30-3.

After the plaintiffs filed these claims, Travelers used the so-called "cost approach" to determine the actual cash value of the damage to the properties.  R. 16 at 5–6; R. 30-1 at 5.  Under this approach, an insurance company estimates the cost of replacing the damaged property—including the cost of labor and materials—and then depreciates this entire amount.  R. 30-1 at 5–6.   The result is the actual cash value that Travelers pays to the policyholder.  Although the plaintiffs concede that Travelers may depreciate the cost of materials, they maintain that Travelers may not depreciate the cost of labor because it does not "age and wear."  R. 33 at 2.  Accordingly, the plaintiffs brought suit against Travelers for breach of

2

contract, unjust enrichment, and violation of two Kentucky business statutes.  R. 1-1.
Travelers now moves for judgment on the pleadings.  R. 30.

## DISCUSSION

When considering a motion under Federal Rule of Civil Procedure 12(c) for judgment
on the pleadings, a court construes the complaint in the light most favorable to the plaintiffs,
accepts all the allegations as true, and draws all reasonable inferences in favor of the
plaintiffs.  *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (citing *Crugher v.
Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014)).  To succeed on a Rule 12(c) motion, the
defendant must show that the plaintiffs have failed to "'state a claim for relief that is plausible
on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where, as
here, a complaint refers to an insurance policy that is central to the plaintiffs' claims, a court
may properly consider these policies as part of a Rule 12(c) motion.  *Greenberg v. Life Ins.
Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).  The Court need not convert the motion into
one for summary judgment.  *Id.*

*Breach of Contract Claim*

The plaintiffs argue that Travelers breached its insurance contracts with them when it
depreciated the cost of labor.  R. 1-1 at 13–14.  As noted above, the insurance contracts
promised to pay the plaintiffs the "actual cash value" of their damaged property, R. 30-2 at 43
and R. 30-3 at 35, but failed to define that term.  *See* R. 30-2 *passim*; R. 30-3 *passim*.
Luckily, the parties agree on a broad definition of "actual cash value":  replacement cost "less
depreciation."  *See* R. 36 at 6 ("There is no dispute that Travelers used the replacement-cost-
less-depreciation method in estimating [actual cash value], and Travelers does not advocate in

3

this motion that a different method was required."); R. 33 at 2 (arguing that an insurer should "determine actual cash value as follows: replacement cost of the property at the time of the loss less depreciation, if any" (citing 806 KAR 12:095)).  This agreed-upon definition is consistent with Kentucky law.  *See* 806 KAR 12:095(9); *Bailey v. State Farm Fire and Cas. Co.*, No. CIV.A. 14-53-HRW, 2015 WL 1401640, at *5 (E.D. Ky. Mar. 25, 2015) (defining "actual cash value" as "the replacement cost of the property at the time of loss less depreciation").[1]  The sole issue before the Court, therefore, is what the word "depreciation" means in this definition of actual cash value.

In Travelers's view, when one calculates the value of damaged property "less depreciation," one must depreciate the entire value of the property.  That value includes the value of the materials used to construct the property as well as the value of the labor used to build it.  R. 30-1 at 11–14.  Thus, when calculating the actual cash value of, say, a damaged roof, Travelers would estimate how much it would cost to replace the roof—including both the materials and the labor to install the materials—and then depreciate this entire amount based on the age of the damaged roof.  *See id.*

In contrast, the plaintiffs argue that calculating a value "less depreciation" means depreciating only the material component of damaged property.  R. 33 at 25–28.  Thus, the plaintiffs argue that Travelers must determine how much it would cost to replace the roof— including both the labor and the materials—and then depreciate only the material component.

---

[1]At times, it seems as though Travelers argues for a definition of actual cash value that is incompatible with its own methodology.  *See, e.g.*, R. 30-1 at 2 (arguing that actual cash value is equivalent to economic value).  Travelers concedes, however, that it defined actual cash value as replacement-cost-less-depreciation and states that it "does not advocate . . . that a different method was required."  R. 36 at 6.

So which side is correct?  The answer is: they both are.  As explained below, in some contexts labor does depreciate.  In other contexts, it does not.  And, for the reasons that follow, it is unclear which category this case falls into.

Kentucky law provides little guidance as to what the term "depreciation" means in this context.  *See Bailey*, 2015 WL 1401640, at *5 (noting that "there is no Kentucky law, statutory [law] or case [law], which squarely addresses this issue.").  Given this lack of authority, the Court begins its inquiry with the "ordinary meaning" of the term.  *State Farm Mut. Auto. Ins. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (citing *Bituminous Cas. Corp. v. Kenway Contracting, Inc*., 240 S.W.3d 633, 638 (Ky. 2007)).[2]

Black's Law Dictionary defines "depreciation" as "a reduction in the value or price of something . . . because of use, wear, obsolescence, or age."  Black's Law Dictionary 535 (10th ed. 2014).  A tangible good can of course lose value in this way.  When one drives a new car off the lot, for example, it immediately begins to decline in value because of "use," "wear," "obsolescence," or "age."  And thus it makes sense to talk about "depreciating" a car and other tangible goods.

Pure services, on the other hand, are different in kind.  The superficial reason is that services are not "subject to wear and tear."  *Bailey*, 2015 WL 1401640, at *6.  It would make little sense, for example, to talk about a taxi ride "wearing out."  The deeper reason is that one

---

[2] The Court recognizes that the courts are split on the meaning of the term "depreciation."  Some have determined that labor does depreciate.  *See, e.g., Papurello v. State Farm Fire & Cas. Co*., No. CIV.A. 15-1005, 2015 WL 7177235 (W.D. Pa. Nov. 16, 2015); *Graves v. Am. Family Mut. Ins. Co*., No. 14-2417-EFM-JPO, 2015 WL 4478468 (D. Kan. July 22, 2015); *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002).  Others have held that it does not.  *See e.g., Riggins v. Am. Family Mut. Ins. Co.*, 106 F. Supp. 3d 1039 (W.D. Mo. 2015); *Labrier v. State Farm Fire & Cas. Co.*, No. 2:15-CV-04093-NKL, 2015 WL 7738362 (W.D. Mo. Nov. 30, 2015).

can resell goods but cannot resell services. A used car has resale value, of course, but what—one might ask—is the bluebook value of a used haircut? Once the labor is finished, the service itself has no residual value on the open market. Thus, the value of labor itself cannot *decline* "because of use, wear, obsolescence or age." *See* Black's Law Dictionary 535 (10th ed. 2014).

The problem with this dichotomy, of course, is that labor is required to produce most goods—even tangible ones. In our car example, a designer must design the car, a factory must make the parts, workers must assemble the parts into a car, and a corporate executive must oversee its production. The value of all this labor is "baked in," as it were, to the value of the car that ultimately leaves the lot. And thus when the value of a tangible good depreciates, the value of the labor that went into producing that good depreciates—in some sense—as well.

The question thus arises: how do we differentiate labor that depreciates from labor that does not? The answer is that some labor merges with the materials and thus increases the market value of a finished good, while other labor does not. To the extent that labor increases the market value of a good—as with a car—then that labor depreciates along with the good. To the extent that labor does not increase the market value of a finished good—as with a haircut—the value of the labor does not depreciate along with the good. For this reason, the ordinary meaning of "depreciation" allows an insurer to depreciate the value of labor that has

merged with a finished good.  It does not, however, allow an insurer to depreciate the value of pure labor that has not merged with a finished good.[3]

An example is useful to illustrate this point.  Suppose that a person wants to buy a grand piano.  The piano materials themselves—wood, metal, and the like—may have a value of only $500.  But building a piano requires great skill and hours of labor.  Because of this labor, the value of the finished piano is $5000.  The labor has increased the price of the finished good, and it has merged into part of a completed product.  And as this finished good—the piano—depreciates in value, the value of the labor that went into building it depreciates as well.

Now imagine that the same piano owner wants to move her piano from one location to another.  She hires movers to help with this task.  The movers charge her $500 to complete this task.  This labor does not increase the value of the piano: the piano is worth the same amount after the workers moved it as it was before.  And once the movers have completed their task, their labor itself has no remaining value.  Since it has no value, it cannot depreciate.

Turning now to the facts of this case, some of the things covered by the policy involve pure labor to replace.  For example, the Brown policy covers "alarm systems."  R. 30-2 at 15. Installing an alarm system does not add to the value of the alarm system itself.  Accordingly, Travelers could not depreciate the value of the labor used to install a damaged alarm system.

---

[3] The Court believes that this definition of "depreciation" is the correct one.  But even if it is not, then the definition of "depreciation" is at least ambiguous.  *See Bituminous Cas. Corp.*, 240 S.W.3d at 641 (holding that a contract was ambiguous because a term was not defined and "each party has suggested a reasonable interpretation in light of the plain meaning of the words used").  And where a term in an insurance contract is ambiguous, "exclusionary or limiting language . . . is to be strictly construed against the insurance company and in favor of the extension of coverage."  *Nationwide Mut. Ins. Co. v. Hatfield*, 122 S.W.3d 36, 39 (Ky. 2003).

In contrast, other covered items involve a labor component that could be depreciated. For example, the Brown policy also covers "snow removal equipment." *Id.* The labor that went into building the snow removal equipment—such as a snow blower—increased the market value of the snow removal equipment. For this reason, Travelers could depreciate it when calculating the value of a damaged snow blower.

The problem is that, with respect to the water damage that is at issue in this case, *see* R. 11 at ¶ 16, 22, it is unclear whether the initial labor added to the market value of the damaged property. This is because most components of a building fall somewhere in between the snow blower and the alarm system. Take the damaged walls that are at issue in this case for example. *See* R. 11-2; R. 11-3. A reasonable argument could be made that the labor to initially nail the boards together or cover them with plaster adds value to the wall: indeed, one could argue that the wall is not "the wall" until the labor is complete. In this way, the wall is more like a "pure good." However, this same point also leads to the opposite conclusion. Unlike with the car or the piano in our examples, labor can never truly be "baked in" to a wall—a person cannot buy a completed wall and just put it into his house. Instead, replacing a wall—or a ceiling or a floor as the case may be—always requires new labor, even if it does not require new materials. Thus the labor for the wall never truly merges into the finished product of the wall. So, in that sense, the labor for the wall is more akin to "pure labor." For this reason, it is unclear whether the damaged property here—such as the walls, the floor, and the ceilings—involved the type of labor that depreciates or the type of labor that does not.

This means that Travelers has failed to meet its burden to prove that it is entitled to judgment on the pleadings. To prevail on a motion for judgment on the pleadings, the

defendant bears the burden of showing that the plaintiff has failed to state a plausible claim for relief. *Coley*, 799 F.3d at 537. As explained above, it is unclear whether the damaged property here involved depreciable or non-depreciable labor components. If it is the latter, Travelers breached its contract with the plaintiffs when it depreciated the labor component. Thus, Travelers has not shown that the plaintiffs have failed to state a plausible claim, and Travelers's motion for judgment on the pleadings must therefore be denied.

In response, Travelers argues that defining "depreciation" this way will result in actual cash value calculations that run counter to Kentucky appellate precedent. R. 30-1 at 9; R. 36 at 7. Perhaps so, but those Kentucky cases were interpreting the phrase "actual cash value" on its own terms. *See*, *e.g.*, *Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064, 1068 (W.D. Ky. 1987) (Actual cash value is the "price something will bring on the open market when neither buyer or seller is acting under compulsion.") (citing *State Auto Mut. Ins. Co. v. Cox*, 218 S.W.2d 46 (Ky. 1949)); *Aetna Ins. Co. v. Johnson*, 74 Ky. 587, 591 (1874) (Actual cash value is "the value of the building as it stood upon the ground on the day it was destroyed."). Here, the parties have agreed that actual cash value is replacement cost less depreciation. *See* R. 36 at 6; R. 33 at 2. And the Kentucky cases say nothing about whether labor can depreciate. Those cases thus provide the Court with no guidance on the question presented: does labor depreciate?

Travelers also argues that defining "depreciation" this way is inconsistent with the way that depreciation is defined in two other legal contexts, namely the law governing tax assessment and the law governing eminent domain. R. 30-1 at 14–19. Travelers informs the Court that in these contexts, experts recommend depreciating the entire value of the property.

9

*Id.*  But in these contexts, appraisers are assessing the value of a building as whole.  And it seems reasonable to think that the labor used to complete an entire building is integrated into the building and has added to the value of the finished product—the building.  Accordingly, the value of this labor depreciates, and an appraiser could depreciate the entire building when calculating its value.  Thus, assessment practices in tax and eminent domain do not conflict with the conclusion the Court reaches here.

In sum, Travelers has not shown that the plaintiffs have failed to state a plausible claim for breach of contract.  This is because it is unclear whether Travelers breached its contract with them when it depreciated the labor component of the damaged property here.  Accordingly, Travelers's motion for judgment on the pleadings must be denied as to the breach of contract claim.[4]  *See Coley*, 799 F.3d at 537.

*Other Claims*

The plaintiffs also allege that Travelers's practice of depreciating labor unjustly enriched Travelers because the plaintiffs were paid less for their damaged property than they were entitled to receive.  R. 11 ¶¶ 60–65.  First, to adequately plead an unjust-enrichment claim, a plaintiff must allege that he conferred a benefit upon a defendant, and that the defendant wrongfully kept the benefit when he should not have.  *Bailey*, 2015 WL 1401640, at *8.  The plaintiffs here do not allege that they paid Travelers money which Travelers wrongfully kept.  Instead, they allege that Travelers wrongfully kept its own money that it should have paid to the plaintiffs.  Second, the relationship between the plaintiff and Travelers

---

[4] Travelers also filed a motion for a hearing on its motion to dismiss.  R. 31.  Because the Court has determined that Traveler's motion to dismiss must be denied, the motion for a hearing will be denied as moot.

was governed by a contract, and an unjust enrichment claim cannot be brought where there is an existing, governing contrast.  *Codell Const. Co. v. Com.*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977).  The plaintiffs concede that their unjust enrichment claim should be dismissed. R. 33 at 40 n.32.  Accordingly, the Court will dismiss the plaintiffs' unjust enrichment claim.

The plaintiffs also allege that Travelers's practice of depreciating labor violated two Kentucky business laws, KRS § 304.12–235 and KRS § 367.170.  In order to survive a motion for judgment on the pleadings for either of these claims, the plaintiffs must allege that: (1) Travelers was obligated to pay the claim under the terms of the policy; (2) Travelers lacked a reasonable basis in law or fact for denying the claim; and (3) Travelers either knew there was no reasonable basis for denying the claim or acted with reckless disregard as to the existence of such a basis.  *Bailey*, 2015 WL 1401640, at *9 (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2007)).  Even construing the plaintiffs' allegations in the light most favorable to them, the plaintiffs have not alleged that Travelers lacked a reasonable basis in law or fact for denying the plaintiffs' claims for the full value of the labor.  *See id.* (dismissing identical statutory claims because "bad faith cannot be found where 'a genuine dispute exists to the status of the law governing the coverage question and the insured's claim is fairly debatable'") (quoting *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 890 (Ky. Ct. App. 1994)).  Only one Kentucky court has addressed the issue presented in this case, *see Bailey*, 2015 WL 1401640, and, as explained above, different courts in different jurisdictions have reached different outcomes.  This area of law is so new and unsettled that this Court certified the particular question posed by this case to the Kentucky Supreme Court.  R. 26 (certifying question to the Kentucky Supreme Court because

the issue was "new" and "unsettled").  Given the state of this area of law, Travelers had a reasonable basis for calculating depreciation as it did.  Thus, Travelers is not liable for violating Kentucky business laws.

## CONCLUSION

It is unclear whether Travelers was permitted to depreciate the labor component of the plaintiffs' damaged property.  For this reason, the plaintiffs have stated a plausible claim for breach of contract, and Travelers's motion for judgment on the pleadings will be denied as to this claim.  However, the plaintiffs have not plausibly alleged that Travelers was unjustly enriched or that Travelers violated the Kentucky business statutes.  So the motion for judgment on the pleadings will be granted as to those claims.

Accordingly, it is **ORDERED** that:

(1)    Travelers's motion for judgment on the pleadings, R. 30, is **GRANTED IN PART AND DENIED IN PART**.  The motion is denied as it relates to Count I of the First Amended Complaint.  R. 11 at 12.  The motion is granted as it relates to Count II, Count III, and Count IV of the First Amended Complaint.  *Id.* at 13–16.

(2)    Travelers's motion for a hearing, R. 31, is **DENIED AS MOOT**.

This the 25th day of April, 2016.



**Signed By:**

*__Amul R. Thapar__*

**United States District Judge**